MARY Z. SMITH et al., Appellees, v. MIDDLE STATES UTILITIES COMPANY of Delaware, Appellant.

No. 43479.

152

September 28, 1937.

Rehearing Denied February 11, 1938.

Hughes, O'Brien & Hughes, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, for appellees.

Donegan, J.—From April 26, 1928, to January 20, 1929, the plaintiffs in this action, on four different occasions, purchased preferred and common shares of stock of the defendant corporation. Such purchases were made on April 26, May 6 and July 17, 1928, and on January 20, 1929, and aggregated 41 shares of preferred and 8 shares of common stock of the defendant corporation, for which the plaintiffs paid approximately $4,000.

On January 22, 1935, plaintiffs commenced three separate actions against the defendant. The first of these actions involved 21 shares of preferred and 5 shares of common stock purchased on May 6, 1928; the second action was in two counts, and involved the 10 shares of preferred stock and 2 shares of common stock purchased on July 17, 1928, and the 2 shares of preferred stock purchased on January 20, 1929. The third action involved the 8 shares of preferred and one share of common stock purchased on April 26, 1928. Aside from the allegations as to the different dates and number of shares purchased there-

on, and the amounts for which judgments were asked, the petitions in all of these actions were the same. When reached for trial in the district court the three cases were consolidated and tried as one action, and the pleadings involved in the first case, cause No. 9136 in the district court, were considered as applicable to the other two cases.

The petitions filed by plaintiffs alleged:

"That to induce plaintiffs to purchase said stock, defendant, through its said agents, representatives, employees, and servants, W. J. Brownell and W. E. Hahn, orally stated to plaintiffs that said defendant was a good, well managed company. That said defendant was solvent and had assets largely in excess of its liabilities. That said defendant could and would buy back the stock at any time for par, less two per cent, plus earned interest. That the properties of defendant were free and clear of mortgage and other debt. That said stock was a first lien on all of the property of the defendant. That the telephone plants were all owned by the Middle States Utilities Company of Delaware. That said defendant had assets so that it could and would guarantee principal and interest. That said stocks were as good as government bonds, that all well-to-do people had it, and said stock was accepted by courts as investments for trust funds."

Said petitions further alleged that plaintiffs relied upon each and all of said statements, and, on account thereof, bought and paid for the stock and, except for such statements, would not have bought same; that said statements were untrue, so known to defendant when made, or, if not known to be untrue, were made as a fact; that, had said statements been true, the stock purchased would have been worth the price paid therefor, but, because such statements were not true, the stock purchased was of little or no value; that, because of defendant's wrongful acts, plaintiffs have suffered damages in the aggregate sum of $4,000; that plaintiffs did not learn of the falsity of said statements until within the last four years, and were not negligent in not learning of them sooner. Plaintiffs asked judgment against defendant for a total of $4,000, with interest from the respective dates of purchase. In its answers, filed April 29, 1935, the defendant denied generally all the allegations of the petitions; denied that plaintiffs had been damaged by any act

of the defendant in any amount; and stated that, if the plaintiffs had any cause of action on account of the things stated in their petitions, the same was barred by the statute of limitations, more than five years having elapsed between the time of the alleged fraud and the bringing of the action.

So far as we can gather from the record, the trial of the case began sometime on the 16th day of· October, 1935. The record indicates that the defendant filed an amendment to its answer on October 16, and that the plaintiffs filed an amendment to their petition on October 17. As statements in the amendment to the answer seem to be in response to statements in the amendment to the petition, we shall refer to them in that order. · The amendment to the petition alleged that about June 1, 1931, the plaintiffs requested the defendant verbally to repurchase the said stock and at that time tendered said stock to defendant, that defendant at said time and ever since has refused to buy back said stock, and that plaintiffs still desire defendant to repurchase same, and tender the same to the defendant. The prayer was for the same relief prayed for in the petition. In its amendment to its answer the defendant states that the petition shows on its face that it is a law action; that any cause of action accrued more than five years prior to the bringing of this suit; and that no facts have been alleged taking the case out of the statute of limitations. Defendant denies that plaintiffs at any time requested defendant to repurchase the stock, or that they tendered the stock to defendant prior to the bringing of this suit, and alleges that the bringing of this suit was an election on the part of plaintiffs to retain the stock and sue for damages. Defendant denies that there was a contract to repurchase said stock, and denies that plaintiff at any time tendered the stock for repurchase to the defendant, or had any right to do so.

On October 17, 1935, plaintiffs filed a reply to defendant's answer in which they denied all the allegations contained therein which are inconsistent with plaintiffs' petitions, and allege that plantiffs did not discover the fraud that was perpetrated on them until about July 1, 1931, and that they were not careless or negligent in not sooner discovering same. The prayer of the reply is for the same relief prayed for in the petitions.

The cause was tried and submitted to a jury, which returned a verdict in favor of the plaintiffs for $4,875.01. Motion

for new trial and exceptions to instructions filed by the defendant were overruled, and judgment entered upon the verdict. From this judgment and all adverse rulings, the defendant appealed.

■■■ Before proceeding to the alleged errors relied on for reversal, we direct our attention briefly to appellees' contention that none of these alleged errors should be considered by us, because of the failure of the appellant to comply with the rules of this court, especially Rule 30. The rules of this court were not adopted for the purpose of creating a trap for the unwary nor for the purpose of disposing of appeals on refined technicalities instead of on their merits. The purpose of these rules is to facilitate the work of the court, as well as to aid attorneys in presenting issues to this court in a clear and concise manner. Many changes have been made in Rule 30 since it was originally adopted. None of these changes has been made for the purpose of adding difficulties to the presentation of appeals in this court, but all of them represent an effort on the part of the court to cause attorneys to make a reasonable effort to present the matters which they desire to have corrected in such a manner that this court can readily determine what particular judgment or order or ruling of the lower court, or part thereof, is claimed to be erroneous, where it will be found in the record, and why it is claimed to be erroneous. The directions and forms set out in the rule were not intended as a model which must be strictly copied, but merely as suggestions to be followed substantially as aids to bringing about the purpose of the rule. Where there has been a good faith attempt to comply with this rule, and the court can readily determine therefrom the particular judgment or order or ruling of the lower court of which complaint is made, where it will be found in the record, and why it is claimed to be erroneous, this court will not refuse to consider an allegation of error upon which an appellant relies for a reversal simply because it does not show a technical compliance in every particular with the provisions of the rule. A substantial compliance, which fulfills the purposes of the rule, is all that is necessary.

■■■ I. Appellant's first alleged error relied upon for reversal is the refusal of the court to direct a verdict in its favor on the ground that it is more probable that plaintiffs' loss and damage were due to the general depression than to the alleged

fraud of the defendant. The trial court submitted the case to the jury on two separate causes of action: damages resulting to plaintiffs from the alleged false representations made by defendant which induced the plaintiffs to purchase the stock; and a contract to repurchase the stock. The error here under consideration has to do with the claim for damages for the alleged fraud and false representations which induced the plaintiffs to purchase the stock. As to this cause of action the court instructed the jury that, if they found for the plaintiffs, "then the amount of damages, if any, that you should allow will be such sum as you find to be the difference between the actual value of the stocks purchased on the dates purchased, and what would have been its actual cash value at said dates and times when purchased, if it had been of the kind and character as represented." No error is alleged as to this instruction, and it is supported by the holdings of this court in Smith v. Packard & Co., 152 Iowa 1, 130 N. W. 1076; Stoke v. Converse, 153 Iowa 274, 133 N. W. 709, 38 L. R. A. (N. S.) 465, Ann. Cas. 1913E, 270; Ross v. Bolte, 165 Iowa 499, 146 N. W. 31; Gray v. Sanborn, Admrx., 178 Iowa 456, 159 N. W. 1004; Workman v. Bales et al., 190 Iowa 1061, 181 N. W. 265. The purchases of stock which plaintiffs allege were induced by fraud were made on April 26, May 6, and July 17, 1928, and on January 20, 1929. The depression which plaintiffs allege affected the value of the stock, and of which they contend the court should have taken judicial notice and instructed the jury, did not commence until the fall of 1929. Under the rule given by the court in its instruction as to the measure of damages, we are unable to see how any reduction in the value of the stock because of the depression was a matter which should have been submitted to and considered by the jury in reaching its verdict.

II. Appellant's next alleged error is based on its claim that the court erred in not directing a verdict for defendant on the ground that more than five years had passed between the time of the fraud and the date of the suit, and no fraud had been pleaded tolling the statute. As the last of the purchases of stock upon which suit was based was made on January 20, 1929, and this action was not commenced until January 22, 1935, it is apparent that this action was not commenced within five years from the date of the accrual of any of the causes of action involved in this case. Subdivision 5, section 11007, of

the Code of Iowa provides that an action "for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect" must be brought within five years from the time the cause of action accrued. Section 11010 of the Code provides that, "In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved."

█▌█ It has frequently been held by this court that the provision of section 11010, that the statute shall not commence to run in cases of fraud until the fraud is discovered by the party aggrieved, is confined to cases where relief on the ground of the fraud involved was solely cognizable in a court of chancery prior to the adoption of the statute; that an action at law for damages growing out of fraud or deceit is not such an action as was solely cognizable in chancery prior to the adoption of the statute; and that the provision of section 11010 would not, therefore, apply to such actions. McGinnis v. Hunt, 47 Iowa 668; McKay v. McCarthy, 146 Iowa 546, 123 N. W. 755, 34 L. R. A. (N. S.) 911; Birks v. McNeill, 185 Iowa 1123, 170 N. W. 485.

It is true that there is a line of cases holding that a plaintiff, who has suffered damages because of the fraud and deceit of a defendant, may nevertheless prosecute his action for such fraud and deceit after five years from the date on which the cause of action accrued; but, when there is no relation of confidence or trust, such holding is confined to cases where the defendant has been guilty of some affirmative act by which he fraudulently concealed the fraud and deceit out of which the cause of action for damages arose. District Township of Boomer v. French, 40 Iowa 601; Wilder v. Secor et al., 72 Iowa 161, 33 N. W. 448, 2 Am. St. Rep. 236; Cress v. Ivens, 155 Iowa 17, 134 N. W. 869; Pullan v. Struthers, 201 Iowa 1179, 207 N. W. 235. Moreover, in order that the fraudulent concealment of the fraud and deceit out of which the damages arose may toll the running of the statute, it must be both pleaded and proved. In their petition the plaintiffs, apparently in anticipation of the defense of the statute of limitations, alleged that they did not discover the falsity of the statements made by the defendant until within the last four years and were not careless or negli-

gent in not learning of them sooner. In its answer the defendant alleged that the cause of action, if any, of the plaintiffs, on account of the fraudulent statements alleged in the petition, is barred by the statute of limitations, more than five years having elapsed between the time of said alleged fraud and the bringing of this suit. In their reply to defendant's answer the plaintiffs again allege that they did not discover the fraud until about four years ago, and that they were not careless or negligent in not sooner discovering the same. Appellant contends that the appellees failed to plead any affirmative act constituting a fraudulent concealment by the defendant, which would toll the running of the statute.

In 37 C. J., 1233, it is said:

"Where a party against whom limitations has been pleaded attempts to bring himself within a particular saving or exception, he must state with distinctness and particularity all such facts as are essential to bring him within such exception, and the pleading in avoidance is ordinarily insufficient, if it consists of mere general allegations, or of statements of the evidence of facts, instead of the facts themselves, or presents mere matters of law."

This rule seems to have been recognized and followed in Willits v. Chicago, B. & K. C. Ry. Co., 80 Iowa 531, 534, 45 N. W. 916, 917, wherein the statute of limitations was plead as a defense in the answer, and we said:

"The plea of the statute of limitations was defensive and affirmative. If plaintiff sought to avoid the plea of limitations by the facts as to the ditch, it was matter in avoidance and proper for reply, without which it was not admissible. No reply was filed, and hence the testimony should not have been admitted."

See, also, Pullan v. Struthers, 201 Iowa 1179, 207 N. W. 235; Bradford v. McCormick, 71 Iowa 129, 32 N. W. 93; Wilder v. Secor et al., 72 Iowa 161, 33 N. W. 448, 2 Am. St. Rep. 236.

There is evidence in the record, however, which appellees contend is sufficient to establish fraudulent concealment by the defendant of the fraud and misrepresentation upon which the plaintiffs' claim for damages is based. An examination of the record shows that some of this evidence was introduced over

defendant's objection, while other parts of such evidence appear to have been introduced without objection. In view of the fact that the record is not clear as to just what evidence there was upon which the issue of fraudulent concealment could have been submitted; and, in view of the further fact that this case must be reversed on other grounds, we do not find it necessary to decide whether or not the trial court erred in refusing to direct a verdict upon appellant's second alleged ground of error, and we deem it sufficient to say that, upon a retrial of the case, if plaintiffs desire to overcome the defendant's defense of the statute of limitations, on the ground of fraudulent concealment by defendant, the burden will be upon them to both plead and prove the facts constituting such fraudulent concealment.

 III. Appellant complains of the court's fourth instruction which, it claims, told the jury that it could find for plaintiffs without consideration of the statute of limitations, or without tolling of that statute, and which instruction was in conflict with other parts of the charge. After setting out the issues as shown by the pleadings, the court proceeded to tell the jury, in its instruction No. 3, that one of the claims of the plaintiffs was that of fraud. In its instruction No. 4 the court set forth five separate matters and told the jury that each of these separate matters must be proved by the plaintiffs before they could recover on the ground of fraud. These matters were: (1) that the defendant, through its agents, made one or more of the representations claimed in the petition; (2) that such representations were untrue; (3) that such representations were known to be untrue when made and were made for the purpose of cheating plaintiffs; (4) that plaintiffs relied upon the representations made and were induced thereby to purchase the stock of the defendant; (5) that the plaintiffs have sustained damages in some amount.

After setting out these five matters the court proceeded to tell the jury,—"and if you find that plaintiffs have established all of said matters by a preponderance of the evidence, the plaintiffs would be entitled to recover a verdict in this cause on the claim of fraud." The court then proceeded in its instructions Nos. 5, 6, and 7, respectively, to explain to the jury the meaning and essentials of fraud and fraudulent intent, reliance by plaintiffs upon the representations alleged to have been made, and the agency of the parties by whom the stock was sold for de-

160

fendant. In its instruction No. 8 the court told the jury that the defendant denied the making of the representations as alleged by plaintiffs, and as a further defense claimed that more than five years had elapsed after the time of fraud and before the commencement of this action. In this instruction the court further told the jury that an action for fraud and deceit must be commenced within five years from the time the cause of action accrues; that the plaintiffs claimed that, while the false representations were made more than five years before the action was commenced, the fraud growing out of such representations was concealed from plaintiffs; and that, while an action for fraud and deceit must be commenced within five years, if the party defrauded does not know of the fraud and deceit practiced upon him, he has five years after the date on which he discovers the fraud, or in reason ought to have discovered it, within which to commence his action. The court then devotes its instructions Nos. 9, 10, 11 and 12 to the cause of action based upon the alleged agreement of defendant to repurchase the stock, and then again proceeds, in instructions Nos. 13 and 14, to discuss the defense based upon the statute of limitations. It is the claim of the appellant that the positive and categorical statement made by the court, immediately following the five matters set out in instruction No. 4, in which it said,—"and if you find that plaintiffs have established all of said matters by a preponderance of the evidence, the plaintiffs would be entitled to recover a verdict in this cause on the claim of fraud," left the jury free, and would be understood by the jury as leaving them free, to find a verdict in favor of the plaintiffs on the ground of fraud without proceeding to consider the defendant's defense of the statute of limitations. Appellees contend, on the other hand, that the instructions in regard to the defense of the statute of limitations fully and clearly set forth the defense based upon that ground, and that the jury must have understood therefrom that, even though they had found for the plaintiffs on the five matters enumerated in instruction No. 4, they should nevertheless refuse to find for the plaintiffs, if they found that the defense of the statute of limitations barred the plaintiffs' action. It is impossible to determine with any degree of certainty whether the conflict, which appellant claims is contained in the instructions, did or did not lead to confusion and misunderstanding on the part of the jury. Where the language

contained in different instructions can be reconciled and would ordinarily be readily understood by the jury as not conflicting, it cannot be presumed that any prejudice resulted from an alleged conflict in instructions. But, where the language of one instruction is absolutely and positively contradictory of the language of another instruction, and there is no reference or explanation in either of them to show that the one refers to an exception or to conditions not covered by the other, there can be no presumption that the conflicting statements have been reconciled by the jury. The fourth instruction contained five definite matters which the court told the jury positively, if found in favor of the plaintiffs, would entitle the plaintiffs to a verdict on their claim of fraud. This instruction contained no reference to further instructions in which a defense of the statute of limitations would be considered, and which might deprive the plaintiffs of the verdict to which they would otherwise be entitled by proving the five matters set out in instruction No. 4. Instructions Nos. 8, 13, and 14, which deal with the defense of the statute of limitations, do not in any way refer to instruction No. 4 or tell the jury that, notwithstanding they may have found in favor of the plaintiffs on the five matters therein set out, the defense of the statute of limitations, if established, would prevent a verdict in favor of the plaintiffs. In such a situation we do not believe that the general instruction, that the jury is to consider and construe all instructions together in reaching its verdict, cures the prejudice arising from the positive and unqualified language employed. We think that, in making the positive statement contained in instruction No. 4, without any qualification and without reference to the defense of the statute of limitations, and in failing to make any reference to or explanation of this statement in the later instructions as to the defense of the statute of limitations, the court committed prejudicial error. See McDivitt v. Des Moines City Ry., 141 Iowa 689, 118 N. W. 459; Christy v. City Railway, 126 Iowa 428, 102 N. W. 194; State v. Keasling, 74 Iowa 528, 38 N. W. 397; Hoover v. Haggard, 219 Iowa 1232, 260 N. W. 540.

IV. Appellant claims that the court erred in submitting to the jury the issue of a repurchase contract, because no contract to repurchase was pleaded or proved. The plaintiffs, among other statements set out as fraudulent, alleged ''that said defendant could and would buy back the stock at any time

for par, less two per cent, plus earned interest.'' This is the only statement contained in the plaintiffs' petition in which they claim to have plead a contract for repurchase, although, in the amendment to the petition they further state that they verbally requested the defendant to repurchase the stock and tendered the stock to defendant. Defendant's amendment to answer denied that there was a contract to repurchase the stock and denied that the stock had been tendered for repurchase. Appellant complains that the allegation in regard to the repurchase of the stock was included in the same paragraph and along with the allegations as to false representation; that, as set out in the petition, it was no more than an allegation of fraud; and that it was not intended to state a cause of action on a contract to repurchase. The trial court submitted this statement in regard to the repurchase of the stock along with other statements alleged to be fraudulent representations. How the trial court reconciled its treatment of this statement, as one sufficient to constitute fraud, with the statements in its instruction that, before a statement could be held to be fraudulent, it must be ''a material statement of a past or existing fact,'' and that a statement of fact upon which a fraud may be predicated does not include ''promises of what will occur in the future,'' is somewhat difficult to understand. The complaint made by appellant, however, is not that this statement was wrongfully treated as one that might constitute a false representation, but that it was treated as a statement upon which to base a claim for recovery on the ground of a contract to repurchase the stock. While the statement, as contained in the petition, might well be considered as being made and understood by the plaintiffs to state a claim of fraud, the further statement in the amendment to the petition that the plaintiffs had requested the defendant to repurchase the stock and had tendered it to the defendant, followed by the denial of any contract to repurchase or any tender of the stock, which was contained in the defendant's amendment to its answer, might easily have lead the trial court to take the position that the question of a contract to repurchase the stock was presented by the pleadings. It is admitted by the appellees that the pleadings in regard to this cause of action are far from being models, and with this we readily agree. Whether the meagerness of the pleadings of both parties was the result of a failure to clearly compre-

hend the issue as to a contract to repurchase, or whether it was due to well-conceived and skillfully executed plans of legal fencing, we need not determine and express no opinion. In any event, we think the pleadings and tactics adopted by the parties were such as to present a difficult situation for the trial court, both in the reception of evidence and in formulating its instructions, and we find no error on the part of the trial court in submitting the issue as to a repurchase contract to the jury.

V. In its eighth instruction the court told the jury:

"You are instructed that an action for fraud and deceit must be commenced within five years after the cause of action accrues. It is the claim of the plaintiffs that while the claimed false statements and representations on which they rely for recovery were made more than five years before this action was commenced, such fraud was concealed from plaintiffs and they did not discover that a fraud had been practiced upon them until about July 1, 1931. You are instructed that while an action based on fraud and deceit must be commenced within five years after the time the action accrues, yet *if the party defrauded does not know of the fraud and deceit practiced upon him, he has five years after date on which he discovers the fraud or in reason ought to have discovered such fraud within which to commence his action.* As applied to the case at bar if you find that the plaintiffs had knowledge and information of the claimed fraud or in reason they ought to have discovered said fraud more than five years before the date of the commencement of this action on February 2, 1935, then they are barred and estopped to maintain this action on the ground of fraud. *But if you find that the plaintiffs did not discover that a fraud had been practiced upon them and in reason they could not have discovered such fraud until less than five years before the 2nd of February, 1935, then plaintiffs are not barred.*" (Italics are ours.)

Appellant complains that the court committed error in giving this instruction, because it tells the jury that the statute of limitations did not run if the plaintiffs did not know of the fraud and deceit practiced upon them, or if, by reasonable care, they did not discover such fraud and deceit. We see no escape from the conclusion that the appellant's allegation of error is well founded.

■■■ As we have already seen in Division II of this opinion, the provision of section 11010 of the Code of Iowa, that in actions for fraud and mistake the statute does not commence to run until the mistake is discovered by the aggrieved party, applies only to actions which, prior to the adoption of the statute, were solely cognizable in a court of chancery, and that an action at law for damages, based on the alleged fraudulent and false statements by which defendant induced plaintiffs to purchase the stock of the defendant, is not an action which, prior to the adoption of the statute, was solely cognizable in chancery. The cases clearly hold that, in such a case, the cause of action accrues when the contract induced by fraud is executed, which, in the case at bar, would be when the stock was bought and paid for. The cases further hold very clearly that, in the absence of some affirmative act on the part of the defendant which conceals from the plaintiff the fraud perpetrated in inducing the purchase, the statute runs without interruption, and the action for the damages is barred at the expiration of five years from the date it accrued. Our cases further hold, however, that if, in addition to the fraud which induced the contract and out of which the damages grew, the defendant has, by some affirmative act, concealed from the plaintiff the fraud by which the plaintiff was induced to enter into a contract, this further fraudulent act of concealing from plaintiff the original fraud, will toll the running of the statute. The instruction here complained of, not only fails completely to explain to the jury that the action for damages will be barred, unless some further fraudulent act of concealment is practiced by the defendant; but it tells the jury that the statute will not run, if the plaintiffs did not discover the fraud which induced the purchase and in reason could not have discovered it until the five-year period had elapsed, regardless of any fraudulent concealment resulting from any affirmative act of the defendant. The instruction contains no reference to any other instruction from which the jury might have derived any further knowledge as to the necessity of some affirmative act on the part of the defendant, which concealed the fraud that induced the purchase. And, although the court's instructions Nos. 13 and 14 did instruct the jury in regard to the running of the statute, unless it was tolled by some further affirmative act of the defendant which concealed the original fraud from the plaintiffs, nowhere in either of these in-

structions does the court refer to its instruction No. 8 or tell the jury that the rules laid down in instruction No. 8 did not apply to the conditions considered in these instructions, or that the statements contained in each separate instruction were only partial statements of the rules of law in regard to the running of the statute of limitations.

■■■ In our opinion, the positive and unqualified statements set out in the court's eighth instruction, in regard to the running of the statute of limitations, were, on their face, a complete statement of the law on this subject, and would readily be so understood by the jury. Although on its face a complete statement of the law on this subject, this instruction was wrong, because it left out the very important element that the statute of limitations would run unless tolled by some affirmative act constituting fraudulent concealment on the part of the defendant. The positive and unqualified statements of this instruction were also in conflict with equally positive and unqualified statements in instructions Nos. 13 and 14. We see no escape from the conclusion that, in giving this instruction, the trial court committed prejudicial error.

VI. Several other allegations of error are set out in appellant's brief and argument. The questions involved in some of these alleged errors have already been considered. Other such allegations of error refer to instructions requested, to evidence asked to be withdrawn from the consideration of the jury, and to the admission of alleged incompetent evidence. As the case must be remanded for a new trial, and, as the evidence upon a new trial may be such that the questions raised by such allegations of error will not be involved, we deem it unnecessary to further lengthen this opinion by their consideration.

For the reasons stated in the opinion, the cause is hereby reversed and remanded for new trial.—Reversed and remanded.

ANDERSON, KINTZINGER, STIGER, and SAGER, JJ., concur.