JAMES PULLAN, Appellee, v. A. D. STRUTHERS et al., Appellants.

**LIMITATION OF ACTIONS:** Fraud—Concealment—Effect. A fraud-
1 doer who by a subsequent fraud conceals the original fraud from his
victim thereby tolls the statute of limitation on the original fraud
until such time as the original fraud is discovered, or in reason
ought to have been discovered. This is true irrespective of the
statute (Sec. 11010, Code of 1924) which permits an action to be
brought after the discovery of a fraud in those cases wherein chan-
cery had exclusive jurisdiction before the enactment of the Code.

**CONSPIRACY:** Evidence—Sufficiency. Evidence held ample to sustain
2 a charge of conspiracy on the part of the officers of a corporation
in the sale of the shares of stock.

**APPEAL AND ERROR:** Harmless Error—Fraud of One Defendant
3 **Only.** An instruction to the effect that, if *any* of several defendants
.by fraudulent concealment prevented the plaintiff from discovering
an original fraud perpetrated upon him, the statute of limitation
would thereby be tolled, is harmless (if erroneous) when the record
quite conclusively established the wrongful connection of all of
the defendants with such fraudulent concealment.

**TRIAL:** Instructions—Misleading Instruction. An instruction to the
4 effect that, in order to render defendants individually liable, it
must be found that they were parties to the conspiracy charged, or
that they "personally participated" in making the representations
which were the basis of the conspiracy, is not erroneous when the
record reveals ample testimony of the "personal participation" of
all of the defendants in the making of the said representations.

**FRAUD:** Acts Constituting—Interwoven Statements of Fact and Opin-
5 **ion.** A fraud-doer may not complain of the submission to the jury
of matters of opinion, as distinguished from representations of fact,
when his statements of opinion are so interwoven with his state-
ments of fact that to separate them is practically impossible. .

Headnote 1: 37 C. J. p. 972. Headnote 2: 12 C. J. p. 639. Headnote
3: 4 C. J. p. 1029. Headnote 4: 4 C. J. p. 919. Headnote 5: 27 C. J.
p. 79.

*Appeal from Polk District Court.*—JAMES DELAND, Judge.

FEBRUARY 9, 1926.

REHEARING DENIED MAY 11, 1926.

ACTION at law, to recover from the corporation and certain

of its officers and directors the amount paid for corporate stock, on the ground that the purchase had been induced by fraudulent representations. From a judgment on a verdict for plaintiff, the defendants appeal.—*Affirmed.*

*Clark & Byers,* for appellant.

*Chester J. Eller* and *Lehan T. Ryan,* for appellee.

VERMILION, J.—The action is to recover the amount paid by appellee for stock in the appellant Bankers' Loan & Investment Company, which, it was alleged in the petition, appellee

1. LIMITATION OF ACTIONS: fraud: concealment: effect.

was induced to purchase by certain false and fraudulent representations by the individual appellants, who were officers of that corporation, and who, it is charged, conspired to thereby obtain the money of subscribers for such stock and convert it to their own use. It is alleged that appellee subscribed for the stock on September 9, 1918; that in September, 1923, he first discovered the fraud that had been practiced upon him, and on September 17, 1923, notified appellants of his election to rescind, and demanded the return of the money paid for the stock. It is further alleged that appellee was prevented from discovering the fraud within five years from the date of purchase of the stock by certain fraudulent acts and declarations by the appellants, whereby the true condition of the corporation was concealed and misrepresented. The action was commenced October 20, 1923. The appellants pleaded that appellee's action was barred by the statute of limitations.

I. The action was commenced more than five years after the purchase of the stock. It was, therefore, barred by the statute of limitations, Section 3447, Code of 1897 (Section 11007, Code of 1924), if the statute began to run from the date of purchase of the stock.

There is no claim that Section 3448, Code of 1897 (Section 11010, Code of 1924), is applicable. That section applies only to actions of which, before the enactment of the statute, chancery had exclusive jurisdiction. *McGinnis v. Hunt,* 47

Iowa 668; *McKay v. McCarthy,* 146 Iowa 546; *Birks v. McNeill,* 185 Iowa 1123.

But, entirely aside from this statutory provision, it is well settled that, where a party against whom a cause of action exists in favor of another, by fraud or actual fraudulent concealment prevents such other party from obtaining knowledge thereof, the statute of limitations commences to run only from the time the right of action was discovered, or might by the use of diligence have been discovered. This doctrine was first announced in this state in the case of *District Township of Boomer v. French,* 40 Iowa 601, which was an action to recover from a public officer money received by him and appropriated to his own use, and where, by fictitious entries in his books and fraudulent representations and concealments, the defendant kept from plaintiff's knowledge the fact of his receipt of the money. The rule was followed in *Findley v. Stewart,* 46 Iowa 655, which was an action to recover real property by the heirs of a grantee, where the grantor had obtained possession of his unrecorded deed and fraudulently destroyed it, and concealed this fact. It was applied to an action to recover from a justice of the peace money collected by him on a judgment, where he had reported that nothing had been collected. *Bradford v. McCormick,* 71 Iowa 129. The rule has been applied, where a fiduciary relation existed, to fraudulent concealment by mere silence. *Wilder v. Secor, Burnop & Law,* 72 Iowa 161; *Blakeney v. Wyland,* 115 Iowa 607; and *Cress v. Ivens,* 155 Iowa 17; *Faust v. Hosford,* 119 Iowa 97. In *Mullen v. Callanan,* 167 Iowa 367, by false and fraudulent representations that plaintiff acquired no title under a conveyance of land to her, she was induced to reconvey, and subsequently repurchased the land at an increased price. In an action to set aside her conveyance and for an accounting, we held that the action was not barred, because the cause thereof was deliberately concealed from plaintiff, and she had no notice of facts putting her upon inquiry.

Here there was no fiduciary relation between the parties in respect to the transaction of the sale of the stock, and something more than mere silence on the part of the appellants must be shown, to toll the statute. *Wagner v. Standard S. T. Co.,* 194 Iowa 1330.

It is insisted that there is no evidence to sustain a finding that the action was not barred, under the instructions of the court.

The alleged fraudulent representations relied upon to avoid the sale of the stock related, in part, to the operations of the corporation, the character of its business, its investments, the expense of doing business, and its earnings and profits available for dividends. Without going into detail, it will suffice to say that the evidence fully warranted a finding that the representations were expressly authorized by the individual appellants, and that they were false, and known by them to be false. As bearing on the fraudulent concealment of the original fraud, it appears that the corporation declared a dividend in January following the sale of the stock to appellee, and another a year later; that, in June, 1920, the corporation, by a circular letter sent to appellee, asked his assistance in the sale of its stock, saying that substantial dividends had been paid, and large additions made to the surplus, and that the annual statement showed that no officer or director drew a dollar of salary for their services, and urging appellee to increase his holdings. In January, 1921, the corporation issued and sent to appellee a circular letter in which it was said that the company had had a good year, had handled a number of profitable transactions, and had more applications for loans than it could fill; that, due to the extraordinary demands for mortgage loans, it was deemed advisable to postpone the payment of a dividend until the use of the money in the mortgage loan department would not be as profitable as at that time.

There was testimony that the corporation never had any profits from which to pay dividends; that it operated at a loss; and that, a few months before the first dividend was paid, its losses amounted to over $23,000; that property was carried on its books at fictitious values; that there were no applications for loans in its files; that some of the individual appellants received commissions on the stock sold; that appellant Struthers received large sums for property or securities of doubtful value.

Dividends were paid that were not earned. There were repeated false assertions with respect to the business and earnings of the corporation that were well calculated to lead the

appellee to believe that the situation was in all respects as
it had been represented to be before he purchased the stock, and
to effectually conceal from him the fact that he had been de-
frauded.  In short, we are of the opinion that there was evidence
from which it might well have been found that the appellants
were guilty of such fraudulent concealment of the very fact
that appellee, having been defrauded into buying the stock,
had a cause of action therefor, as that the statute of limita-
tions would not begin to run until the fraud was discovered,
or could have been discovered in the exercise of due diligence.

II.  Appellee testified that, in September, 1923, he went
to Des Moines to see about the corporation; that he had
written them a letter, and did not get a satisfactory answer.
An examination of the books of the company was then made by
an accountant, and notice of rescission served, and this action
commenced on October 20th following.

It would appear that, as soon as the five years had elapsed,
efforts at concealment ceased; that appellee's suspicions were
at once awakened, and he made an investigation that resulted
in the discovery of the fraud that had been practiced upon him.
This is significant, not only as bearing upon his diligence, but
also as indicating the effectiveness of the methods adopted by
appellants to conceal their fraud.  There was no lack of dili-
gence in bringing suit after discovery of the fraud.  Nor do we
think appellee was, as a matter of law, chargeable with laches
in not sooner discovering the fraud.  It appears to have re-
quired the services of an expert accountant to uncover the
facts, and this step was taken promptly when appellee's sus-
picions were first aroused by the failure of the corporation to
make satisfactory reply to his inquiries.

III.  We think there was ample evidence to warrant the
submission to the jury of the question of conspiracy on the part
of the individual appellants.  *Hanson v. Kline*, 136 Iowa 101.
Aside from the fact that they were all officers
or directors of the corporation, there is testi-
mony that they all participated in sending
Wade, a stock salesman, to see appellee for the purpose of selling
him stock, and expressly directed Wade to make some of the
representations made to appellee.

2. CONSPIRACY:
   evidence: suffi-
   ciency.

IV. Complaint is made of an instruction that said that, if the defendants, or any of them, by fraudulent concealment prevented the plaintiff from obtaining knowledge of the fraud, the statute of limitations would not commence to run until the fraud was, or might have been, in the exercise of due diligence, discovered. The specific objection is that, under the instructions, the fraudulent concealment by any of the defendants of the original fraud would toll the statute of limitations as to all of them. This, if error, was without prejudice, since the evidence showed that the payment of unearned dividends, and the circular letters, in which claims as to the subsequent operations of the corporation were made, were acts of the corporation of which the appellants were officers and directors. The fraudulent concealment was by the acts and declarations of the corporation itself, acting through and by the appellants, its officers and directors.

3. APPEAL AND ERROR: harmless error: fraud of one defendant only.

V. The court instructed, in substance, that, to render the individual appellants liable, the jury must either find that they were parties to the conspiracy charged, or that they "personally participated" in making the representations. It is said that the instruction was confusing, misleading, and prejudicial, in that Ellis was the only one of the appellants who had anything personally to do with selling the stock to appellee. We think the instruction was not misleading to appellants' prejudice, but was more favorable to appellants than they were entitled to. There was testimony that all of the individual appellants participated in having Wade attempt to sell the stock to appellee, and directed him to make certain of the statements relied upon, which he did. Aside from its tendency to establish the claimed conspiracy and the participation of the individual appellants in it, this testimony would clearly have warranted an instruction that the individual appellants would be responsible for any of the representations of Wade made by their express direction.

4. TRIAL: instructions: misleading instruction.

VI. Appellants complain of an instruction that set out the alleged false representations relied upon, in that it is said

that some of them were promises, others were not shown to be false, and some were made by Ellis alone.

5. FRAUD: acts constituting: interwoven statements of fact and opinion.

One such representation, that the company had purchased a certain building in Des Moines for $60,000, was misleading. If we understand the record, it purchased or took a mortgage for $60,000 on a building standing on leased ground, which would revert to the owner of the fee at the end of the term. There was testimony that the mortgagors received nothing for the mortgage. The mortgage, we understand, was foreclosed. The company's books showed $58,300 charged against the property, of which about $21,000 was paid to various parties, and over $37,000 credited to the appellant Struthers, which appellants Struthers and Jamison said was for various improvements, repairs, and expenses paid by him. There was testimony that the leasehold, under the terms of the lease, was without market value. Some of the representations were, perhaps, matters of opinion, or related to the future, but they "were so interwoven with fact statements relied upon that it would be difficult to analyze and separate the influence that one or the other had upon the mind." *Dimond v. Peace River L. & D. Co.*, 182 Iowa 400; *Newton v. Young*, 197 Iowa 1143. We think there was no prejudicial error here.

VII. The stock subscription signed by appellee was for 45 shares, and it is claimed that it was made on behalf of a co-partnership, composed of himself, his father, and his brother, and that the action was not prosecuted by the real party in interest. It was shown that 15 shares of stock were to be issued to each of the three, and that 15 shares were issued to appellee; and appellants admitted on the trial that appellee "paid $1,875 for these 15 shares of stock, less any dividends credited." The contention is without merit.

We find no prejudicial error in the record, and the judgment is—*Affirmed*.

STEVENS, FAVILLE, and ALBERT, JJ., concur.

DE GRAFF, C. J., takes no part.