AGNES J. McGRATH, Administratrix, et al., Appellants, v. MINNIE M. DOUGHERTY, Administratrix, et al., Appellees.

No. 44044.

Stipp, Perry, Bannister & Starzinger, and Thos. E. Mullin, for appellants.

O. M. Slaymaker, E. L. Carroll and Kenneth H. Davenport, for appellees.

Anderson, J.—The facts upon which plaintiffs base their cause of action are not seriously complicated. The Security Loan & Investment Company of Creston, Iowa, was incorporated in 1920, for the purpose of selling and dealing in securities. The defendants were the incorporators. About the time of the incorporation the company entered into a contract with the Farmers & Merchants Savings Bank of Creston, Iowa, which provided for the issuance of debenture bonds and this agreement provided that before any bonds could be issued there would be a deposit made with the bank of real estate mortgages

of the face amount of one hundred five per cent of the face of bonds issued against them, and that the mortgages should be first liens on real estate appraised at not less than twice the amount of the mortgages. About April 1, 1922, the plaintiffs having deposits in the bank were told of the debenture bonds of the investment company and were given a sample of the bonds. After familiarizing themselves with the warranties and representations contained in the bond and the certificate thereon they purchased $5,500 par value of these bonds and paid therefor cash in that amount. These bonds contained a provision to the effect that they were not negotiable until the certificate on the back thereof was signed by the trustee. The certificate referred to was in the following language:

"To secure payment of these debentures, Security Loan & Investment Company has deposited with this bank as trustee certain mortgages and other evidences of indebtedness, all such are liens upon improved real estate appraised at not less than twice the par value of such securities, amounting to $1,050.00 for each $1,000.00 of debentures so certified or countersigned, and we hold the securities aforesaid in trust for the benefit of the lawful holder, or holders, of the debentures above described, free from all incumbrance, with full power to collect and sell the same and use the proceeds to redeem said debentures in case default is made in their payment by said Security Loan & Investment Company; all of which is more fully set forth in certain agreements between said Company and this Bank, dated August 25, 1920."

The trust agreement to which reference is made in the latter part of the foregoing certificate contained the following provision:

"Whereas the said Security Loan & Investment Company desires to issue and sell its debentures, the same to be secured by the pledge of real estate mortgages, and further evidences of indebtedness which are liens upon real estate appraised at not less than twice the amount loaned thereon."

The trust agreement also contained the following provision:

"When requested the trustee shall make out a detailed statement of the securities held by it for the redemption of any series, and furnish same to the party making the request."

It was first claimed in the pleadings, and proof was offered to support it, that the plaintiffs relied upon the truth of the representations contained in the certificate of the trustee indorsed upon the reverse side of the bonds and the provisions of the trust agreement, and also upon similar oral representations made by an officer of the bank at the time of the purchase of the bonds, but the oral representations were later abandoned and the appellants now claim that "the sole misrepresentations proven at the trial were those contained in the bonds themselves and in the contracts between the Security Loan & Investment Company and the Farmers & Merchants Savings Bank, Trustee." The appellants admit that there was no separate cause of action proven against any defendant but claim that they were entitled to go to the jury against every defendant as to whom knowledge of the representations made was proven, either by actual proof or by reason of the knowledge which such defendant must have had by reason of his official position in the investment company. It is claimed by the appellants that the certificate upon the back of the bonds signed by the trustee was false and untrue and such false and untrue statements as therein contained were known or should have been known to the officers and directors of the Security Loan & Investment Company, the defendants in the instant case; and that the plaintiffs believing the representations and statements in said trustee certificate contained and relying thereon were induced to and did purchase the bonds which are the subject matter of this action. The bonds which were purchased in April, 1922, matured in 1927, and were exchanged by the plaintiffs for like bonds containing the same trustee certificate and plaintiffs claim that they made such exchange relying upon the truth of the statements and representations contained in said certificate. The 1927 bonds matured in 1932 and were again exchanged for like bonds containing the same statements and indorsements as in the prior bonds; and plaintiffs continue to contend that such statements were false and untrue and were made for the purpose of deceiving and defrauding the plaintiffs, and that the plaintiffs believing the truth of such statements and relying thereon were induced to and did make the exchanges of said bonds. And plaintiffs claim that the statements and representations were false and untrue and so known to be by the officers and directors of the investment company or should have been so known by them, and

that by reason thereof the plaintiffs were deceived and defrauded and the defendants should be held liable for the resulting damage.

About 1933 both the investment company and the bank went into receivership and the receiver of the investment company testifies that the investment company will pay out about forty cents on the dollar in its final liquidation.

Thomas L. Dougherty was the secretary of the Security Loan & Investment Company and also assistant cashier and cashier of the bank during the entire period involved in this action and he signed and executed the trustee certificates on the back of the bonds in the name of the Farmers & Merchants Savings Bank, as its cashier. He is not a party to this action.

E. N. Dougherty, deceased, was the president of the investment company and the other defendants, Colbert, Busby, and Burns, were directors. E. N. Dougherty, whose estate is one of the defendants herein, signed the issues of bonds in 1922 and 1927, as an officer of the investment company, and the defendant Burns signed the issue of 1932. The other defendants, Colbert and Busby, did not sign anything. None of the defendants signed any of the trustee certificates on the back of the bonds. These were all signed by Thomas L. Dougherty as cashier of the bank. The trust agreement between the bank and the investment company contained no representations of any kind, but provided a method of securing bonds which, if followed by the trustee, would result in securing the bonds in the manner stated in the trustee certificates. No showing whatever was made in the trial of the case as to the assets of the investment company at the time the bonds were sold to the plaintiffs in 1922, but the bills receivable register of the investment company contained entries showing the transfer by the investment company to the bank of approximately $17,000 in mortgages and securities as security for the debenture bonds and that only $8,000 in such bonds had been issued and negotiated at the time of the purchase by the plaintiffs of the $5,500 of the bonds in question. The charge here is that the representations contained in the certificate on the bonds issued in 1922 were false and untrue. In answer to this charge we adopt the language of the trial court in his ruling on the motion to direct a verdict:

"But now the charge is made here that those representations

were false and untrue. As I have gone over this record in my mind I have tried to look at these books, I have tried to discover wherein the charge was false. There is no witness, no examiner, no accountant or nobody else that tries to tell the court or this jury wherein the statement was false and untrue at the time these certificates of stock or these bonds were purchased by the plaintiffs. Now, in order to allow a case to go to a jury there must be certain things shown in a case of this kind. First, there must be established the false representations. Second, the representations must be false and untrue when made. Third, that the party sought to be charged with making them knew that they were false and untrue when he made them. Fourth, that the party purchasing the property relied upon the statements and representations made, and fifth, that by reason of the reliance upon the representations those parties sustained damages in some amount. There are two or three of those essential elements to every fraud case that are as old as the history of the law itself, that are not established in this case. The first is that there is nothing in this record that establishes just what real estate mortgages or bonds or other things that were first liens upon real estate were owned and possessed by the Security Loan & Investment Company at the time these bonds were issued. They were issued in 1922. The audit made at the end of December, 1922, without any of the books and records being before the auditor at the time these bonds were purchased showed that at that time the Security Loan & Investment Company had assets of at least $30,000 more than the liabilities such as the holders of the bonds, the plaintiffs in this case, were entitled to participate in.''

The record fully sustains the foregoing pronouncement of the trial court.

There was testimony that at the time of exchanges of the bonds in 1927 and 1932 there were no securities on deposit with the trustee as mentioned and certified to by the trustee, but this testimony is not at all convincing. A witness who had not been connected with the bank until some time after all of these transactions had occurred testified that there was no record in the bank showing the deposit of any securities securing the bonds of the investment company, but this evidence is not at all convincing, even though it be held to be material and relevant.

No witness whose testimony was offered was in possession of all of the books and records of the investment company. None had possession of or considered the bills receivable register of the investment company and apparently no one had been in possession of or considered another book which was missing from the office and records of the investment company and which it was claimed by a witness, Thomas L. Dougherty, secretary of the company, contained complete statements and records of the assets of the company and of that portion of them that was deposited with the bank as security for the payment of the debenture bonds. So that the record as to whether or not any of the trustee certificates indorsed upon the bonds contained untrue and fraudulent representations is unsatisfactory and unconvincing and leaves but a shadowy inference or suspicion that something was wrong, and certainly not sufficient substantial proof to warrant the submission of the issue to a jury and permit it to speculate and conjecture as to what did or did not exist.

The motion to direct a verdict was based upon many grounds and was sustained generally. We will only mention a few of the grounds contained in the motion. It was contended by the defendants that there was no competent, proper or sufficient evidence to authorize or permit the submission of the case to the jury; that there was no competent or sufficient evidence in the record to fix a liability upon any of the defendants named; that there was no evidence the named defendants had anything to do with the sale of the bonds; that there was no evidence to show that the defendants or any of them were bound by any statement, representation or act done by T. L. Dougherty, the cashier of the bank, and that Dougherty had no authority to make any statement or representation that would bind any of the defendants; that the record fails to show any actionable fraud on the part of either or any of the defendants; for the further reason that the evidence shows that the claim of plaintiffs is barred by the statute of limitations.

■■■ Many errors are assigned by the appellants as to the rulings of the court on offered evidence and proof, but in our view of the case none of these alleged errors are now material or prejudicial. If the rejected evidence had been admitted it would simply have added inferences and suspicions reflecting upon the various transactions.

■■■ The appellants also contend that the court erred in holding that the plaintiffs' claim was barred by the statute of limitations under the provisions of section 11010 of the Code. The section referred to is as follows:

"In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved."

Paragraph 5 of section 11007 of the Code also provides that actions may be brought for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for in this respect, within five years.

It is a general rule that where statutes do not otherwise provide, a right of action at law for a fraud accrues and the statute begins to run when the fraud is consummated. Gamet v. Haas, 165 Iowa 565, 146 N. W. 465; McKay v. McCarthy, 146 Iowa 546, 123 N. W. 755, 34 L. R. A. (N. S.) 911; Wagner v. Seed Tester Co., 194 Iowa 1330, 191 N. W. 314; Hills Savings Bank v. Cress, 205 Iowa 306, 218 N. W. 74.

Section 11010 does not apply to actions at law as has been held by this court in many cases. Conklin v. Towne, 204 Iowa 916, 216 N. W. 264; Pullan v. Struthers, 201 Iowa 1179, 207 N. W. 235; Brown v. Brown, 44 Iowa 349.

It has also been held that ignorance of the existence of a cause of action at law does not prevent the statute from running unless there has been an intentional fraudulent concealment. Campbell v. Long, 20 Iowa 382; Washington Co. v. Mahaska Co., 47 Iowa 57; Boomer Dist. Twp. v. French, 40 Iowa 601; Carrier v. Chicago Railway Co., 79 Iowa 80, 44 N. W. 203, 6 L. R. A. 799; Bradford v. McCormick, 71 Iowa 129, 32 N. W. 93.

Plaintiffs claim that they did not discover the fraud until some time in 1933 or 1934; that therefore section 11010 relieves them from the bar of the statute, but as we have commented, that section does not apply to law actions and applying it in any action the plaintiffs must show that proper and reasonable diligence was used to discover the alleged fraud. In this instance the trust agreement provided that "when requested the trustee shall make out a detailed statement of the securities

held by it for the redemption of any series, and furnish same to the party making the request.'' This the plaintiffs failed to do over a period of eleven or twelve years. And it is apparent that they did not place themselves within the provisions of section 11010 of the Code. There is however another well established rule in this state relating to actions for fraud to the effect that when a party against whom a cause of action has accrued, by fraudulently concealing the same, prevents the injured party from obtaining knowledge thereof, then the statute does not commence to run until the cause of action was discovered or might be discovered by the use of reasonable diligence. Findley v. Stewart, 46 Iowa 655; Bradford v. McCormick, supra; Humphreys v. Mattoon, 43 Iowa 556, and other cases heretofore cited.

In the case of Gamet v. Haas, supra, the transactions claimed to have been fraudulent occurred in 1903 and an action for damage was brought in 1912, and the court in that case said that the action was barred unless fraudulently concealed in which event the statute of limitations did not begin to run until it was discovered or might have been discovered by the exercise of reasonable diligence.

██ The bonds here in question were originally purchased in April, 1922, and the plaintiffs alleged the fraud and misrepresentations occurred at that time and were repeated and continued in 1927 and 1932, the times at which the bonds were exchanged. The damages, if any, occurred when the first bonds were purchased. The same written representations were contained in all three issues of bonds but this fact did not serve to toll the statute on the theory that the subsequent misrepresentations were concealments of the first and original alleged misrepresentations and fraud. The record is absolutely devoid of any testimony showing any semblance of due diligence on the part of the plaintiffs. The bonds themselves provided that they should not be negotiable until the trustee certificates on the back had been signed, and the trustee certificates referred to the trust agreement. The plaintiffs were charged with notice of these provisions and with a further provision giving them the right to obtain a detailed list of the securities securing the bonds at any time by demanding the same from the trustee. This they did not attempt to do.

The plaintiffs contend that the action was ''one to recover

for fraud, where the fraud was continuously concealed until August, 1933." This indicates very strongly that the plaintiffs were relying upon the original fraud alleged to have been perpetrated in 1922, and that the transactions in 1927 and 1932 were evidence of concealment of the original fraud, sufficient to toll the statute. We do not think such a position is sound, and if there is no sufficient evidence establishing the perpetration of a fraud in 1922, as we have concluded, then the subsequent transactions could not possibly be considered as concealment of a fraud that did not exist, or was not proven. There is no competent evidence that any of the defendants in the instant case made any representations either oral or written, or in any way induced or persuaded the plaintiffs to purchase the bonds or exchange the same.

▮▮▮ The plaintiffs attempt to excuse the lack of due diligence on their part in not requesting a statement of the securities securing the bonds by asserting that the request would have had to be made from the very parties perpetrating the fraud and that it would be remarkable, in such event, if a true statement would have been furnished by the very parties perpetrating the fraud. This is no answer or excuse for the plaintiffs' failure in this regard. If such a statement or list of securities had been furnished upon request and it proved untrue and incorrect at least it would have furnished a basis for and evidence of fraud or concealment of fraud. It appears that the plaintiffs' position on this question of the statute of limitations is somewhat inconsistent. They first claim that the action is upon the original fraud alleged to have been practiced in 1922, and that the subsequent acts "was an active repeating of the false representations", and concealment of the original fraud. The plaintiffs state in their reply argument that the plaintiffs were "thus lulled to sleep by the repeating of these fraudulent representations which actively concealed the original fraud." They later claim that they are entitled to recover on such repeated misrepresentations in 1927 and 1932. We cannot agree with such claim.

▮▮▮ Finally, if any fraud was committed, it was committed by the bank, trustee, and not by the investment company or any of its officers, the defendants in this action. There is no evidence of any kind in the record regarding false and fraudulent representations other than the printed representa-

tions on the back of the certificates or bonds that were purchased by the plaintiffs. There is no competent oral testimony of any statement or declaration made by the defendants in connection with the issuance or sale of these bonds. It is true that some officer of the investment company signed the bonds, but they contained the provision that they were not to be negotiated until the certificate of the trustee thereon was duly executed. If any fraud was practiced or misrepresentations made it was contained in the trustee certificates and was made by the trustee.

We find no prejudicial error in the record and are satisfied that the ruling of the trial court was right. An affirmance necessarily follows.—Affirmed.

HAMILTON, C. J., and STIGER, KINTZINGER, MITCHELL, DONEGAN, PARSONS, and SAGER, JJ., concur.