This case involves the interpretation of the provisions of a storekeepers' burglary and robbery insurance policy, and their application to an agreed statement of facts as follows:
On December 15, 1941, while the said policy of insurance was in full force and effect, at about 1 o'clock in the afternoon, a negro man came into the retail drug store located at 1269 North Boulevard, in the City of Baton Rouge, which store was owned and operated by plaintiff, and asked the plaintiff to wait upon him. She thereupon walked towards the front of the store, standing behind a container of iced bottled drinks, and the negro then told plaintiff that he wanted to see a syringe, which was in the lower part of the case in the rear of the container of iced bottled drinks, and in order to obtain the syringe the plaintiff stooped over, and in doing so, she was unable to observe the other parts of the premises, particularly the cash register and cash drawer. The negro accepted the first syringe shown him; he thereupon asked to see some nail polish, which was also located in the same case from which the syringe had been obtained, and in compliance with *Page 167 
the negro's request, plaintiff was again forced to stoop over as before. She removed from the case several containers of nail polish, which she showed to the negro and from which he selected one, and then asked to be shown some lip sticks, and upon plaintiff showing the negro the lip sticks, he focused his attention and gaze upon her hands, upon which were four diamond rings. At this point plaintiff became extremely frightened and sought not to disclose her fright to the negro, and proceeded to show the negro a lip stick container, which the negro indicated met with his approval. She thereupon asked the negro if these articles which he had selected were all he wanted to buy, and plaintiff commenced to go around the container of iced bottled drinks, towards the wrapping counter in order to wrap up said articles, when the negro stated: "I don't want none, as I don't have any money". Plaintiff then became further frightened and screamed in a loud voice for Benny, her delivery boy, and the negro then asked "Who is Benny, your delivery boy?" He then pushed himself in front of her, blocking her passage, and then rushed to a point near the wrapping counter, which held the money drawer, and looked in the direction of the money drawer, and thereupon left the premises hurriedly. On leaving the premises hastily the negro bumped into a Mr. St. George Hines, who happened to be passing in front at the time the negro made his exit. Almost simultaneously with this, a Mrs. Cheek entered the premises, seeking change for a five dollar bill, and plaintiff still nervous and frightened from her experience, went to the money drawer in the back of the store, discovered the telephone off of the hook, and the back door unlatched. Plaintiff had been greatly frightened by the actions of the negro on whom she had waited, and although she did not know that the negro had an accomplice, when she saw the telephone off of the hook and the money drawer open and the back door unlatched, she realized that a crime had been effected, and she thereupon 'phoned the city police and her husband, and upon the arrival of her husband he telephoned the office of the Sheriff of the Parish of East Baton Rouge, and reported the incident to the authorities. When she examined the money box, she found the sum of $312 in cash currency and checks had been stolen.
On December 17, 1941, the negro man and his accomplice were arrested, and upon being tried, were convicted, and it was shown in the criminal trial that while the negro man was engaged in keeping plaintiff's attention distracted, his accomplice had entered the premises by kicking open the back door, and had crawled on his hands and knees to the cash register, which he forcibly opened and from which he extracted the cash and checks. Of the $312 stolen, $99.05 was represented by checks, on which payment was stopped and which plaintiff recovered later, making a net loss to plaintiff of $212.95, for which she seeks recovery under the policy of insurance, principally under the provision of Paragraph 1, which reads as follows: "I. To indemnify the Assured for loss not exceeding Two Hundred Fifty Dollars ($250.00), of such property, occasioned by ROBBERY from a custodian within the premises, all as defined in Condition A on Page 2 hereof;"
And that part of Condition A, which reads as follows: "`Robbery' as used in this Policy shall mean a felonious and forcible taking of property by violence inflicted upon a custodian, or by putting him in fear of violence; or by any other overt felonious act committed in the presence of a custodian and of which he was actually cognizant * * *".
On the agreed statement of facts Judge Robert S. Ellis, Jr., rendered judgment in favor of plaintiff and against defendant for the full sum of $212.95, without giving written reasons for his judgment. The defendant has appealed.
The principal contention of the defendant is that the only provision of the policy which could possibly apply to this case is the one quoted above, and that the said provision does not apply, for the reason that "there was no connection whatever between the theft and the fear which the plaintiff and appellee alleges she suffered", and "There was no taking of property by any other overt, felonious act committed in the presence of the custodian, and of which she was actually cognizant. While it may be true that the property was stolen in her presence, although she was not aware at the time, it was certainly true that she was not cognizant that the money was being stolen". Defendant contends that Condition A shows that the insurer meant to protect itself against just such a loss as the one alleged by plaintiff, and that such loss was plain larceny or theft and not robbery, and that there is a vast distinction between a burglary and a robbery policy, and *Page 168 
a larceny and theft policy, as shown by citations from other jurisdictions.
The plaintiff, on the other hand, contends that the facts in this case show that a crime was committed by the negro man and his accomplice in her presence, and that she was cognizant of the acts of the negro customer and that such acts constituted an overt, felonious act committed in her presence and just as much a part of the robbery as the actual taking of the money by the accomplice, which was discovered immediately after completion of the crime.
Neither the plaintiff nor the defendant, both of whom are represented by able counsel, has been able to cite a Louisiana case. They have cited to us many cases from other states. It is true that the courts are not in entire accord touching the issues involved in cases of this kind, but after reading all the cases cited by counsel for both sides, our conclusion is that the weight of authority is with plaintiff's contention.
The decision from other jurisdictions which impresses us as being most applicable to the facts herein is that of Buffalo Smoketeria, Inc., v. Metropolitan Casualty Ins. Co. of N.Y., 143 Misc. 894, 258 N.Y.S. 581. In that case the policy involved defined "robbery" as: "Robbery shall mean a felonious and forcible taking of property * * * by an overt felonious act committed in the presence of a custodian and of which he was actually cognizant." In the policy involved in this case "robbery" is defined as: "Robbery as used in this Policy shall mean a felonious and forcible taking of property * * * by any other overt felonious act committed in the presence of a custodian and of which he was actually cognizant * * *". Thus it can readily be seen that the definitions of "Robbery" in both policies are practically identical, word for word. The facts in that case, as stated by the court, were as follows: A delivery clerk of plaintiff entered certain premises known as 381 1/2 Niagara Street for the purpose of refilling an automatic cigarette vending machine. He left his truck outside and remained in the premises about three minutes. On coming out he saw his truck being driven up the street and around the corner. The next day the truck was found abandoned with its contents stolen.
The insurance company contended, as in this case, that the alleged robbery was not committed in the presence of the custodian. The court said: "* * * even in criminal prosecutions for robbery which require a rigid interpretation of the language of the definition, the courts have not construed the word `presence' to mean a literal, physical presence", citing many decisions, together with 24 Am. Eng. Ency. of Law, 1002; 54 C.J. 1015.
"There was no requirement in this case that the overt act should be seen by the custodian as it commenced. He knew that the truck was being driven away. His brief presence in the store was no more than if he had turned his back and then turning again had seen the truck being driven away. The evident intent of the clause in question was to guard against careless or pretended losses by the custodian and not to avoid a loss by a technical strained construction of the policy."
In the language of plaintiff's counsel: "The actions of the two participants in this crime were certainly `overt and felonious'. The custodian — the plaintiff — was certainly `present', and she was certainly `actually cognizant' of the actions of the accomplice — an accomplice without whose participation the crime could not have been committed." And, as stated by the court in the case supra, we are of the opinion that in the case at bar "The evident intent of the clause in question was to guard against careless or pretended losses by the custodian and not to avoid a loss by a technical strained construction of the policy."
For the reasons assigned, the judgment is affirmed.