EDWARD P. COLE, appellee, v. HARTFORD ACCIDENT & INDEMNITY
COMPANY, of Hartford, Connecticut, appellant.

No. 47772.

(Reported in 46 N.W.2d 811)

MARCH 6, 1951.

Miller, Huebner & Miller, of Des Moines, and Whitmore & Gaffney, of Atlantic, for appellant.

Jones, Cambridge & Carl, of Atlantic, for appellee.

GARFIELD, J.—Plaintiff, proprietor of a jewelry store in Atlantic, alleges in both counts of his petition two trays of rings were stolen from his safe. Count I seeks recovery under terms of a policy issued by defendant insuring plaintiff against loss by robbery as defined in the policy. Also covered by the policy was loss by burglary as therein defined.

Testimony of plaintiff and his clerk Miss Gearhart as to how the loss occurred is that when they were alone in the store about noon on November 15, 1945, two well-dressed men and a woman, unknown to them, came to the store; the woman asked to look at dresser sets and Miss Gearhart showed them to her; plaintiff asked the men if he could help them and was told they were waiting for the lady; Miss Gearhart's back was toward the men and she paid little attention to them; plaintiff "busied himself," was called to the telephone, and part of the time was in his office near the rear of the store; after ten to fifteen minutes one of the men suggested to the woman they leave if she had not made up her mind what she wanted; the three then left without buying anything.

Nearly three hours later a customer came in to look at diamond rings. Plaintiff went to the safe where, about 11 a. m., Miss Gearhart had put the rings, and for the first time noticed two trays of rings, about ninety-six in all, were not in their usual place. Plaintiff asked Miss Gearhart if she had shown diamond rings that afternoon. She replied "No." Plaintiff then asked Miss Gearhart to make like inquiry from another clerk temporarily out of the store. This other clerk also said she had shown no diamonds that day. Plaintiff then concluded the two men who accompanied the woman to the store had taken the missing rings from the safe while Miss Gearhart was waiting on the woman. He then reported his loss to defendant's local soliciting agent, the sheriff and a jewelers' security organization to which he belonged. No trace of the two men or woman was found.

The policy on which Count I is based defines "Robbery" as "a felonious and forcible taking of insured property: (1) by vio-

lence inflicted upon a Messenger or a Custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant."

There is neither allegation nor proof that clause (1) or (2) has any application here. The vital question as to Count I is whether there is any evidence the rings were taken by overt felonious act committed in the presence of plaintiff or Miss Gearhart *of which either was actually cognizant.*

Count II seeks recovery for claimed fraud of a special agent of defendant in misrepresenting the coverage of a provision of a previous, similar policy insuring against loss by burglary as defined in the policy. The policy in force when the loss occurred and the previous one covered loss by burglary as therein defined to be "the felonious abstraction of any such insured property from within the insured part * * * of the safe * * * by * * * felonious entry into such safe and such insured part thereof * * * when all doors of such safe * * * are duly closed and locked by all combination and time locks thereon; provided that such entry shall be made by actual force and violence of which there shall be visible marks made by tools, explosives, electricity, gas or other chemicals, upon the exterior of (1) all of said doors of such safe and of the insured part thereof * * *."

There is neither allegation nor proof that entitles plaintiff to recover under the burglary provision of the policy. In fact it appears that at the time in question the outer doors to plaintiff's safe were not closed and the combination lock on those doors was of course not locked. Although the inner door to the safe was closed the combination lock on that door was also not locked. And it is admitted there were no visible marks of violence made by tools or otherwise on any door to the safe.

As to Count II, plaintiff's testimony is that a policy similar to the one in force at the time of loss was issued by defendant for a three-year term commencing in November 1941; plaintiff told the local soliciting agent he was not satisfied with the policy; in January or February 1942, McInerney, a special agent for defendant, came from the Des Moines office to Atlantic to see plaintiff and first told plaintiff the burglary provision of the policy would apply only if the safe were blown up; plaintiff

then informed McInerney "the policy that way wouldn't do the job for me" and explained he could not take time to unlock the combination locks on the safe in order to get rings to show each customer therefor; McInerney "worked the inner door [of the safe] and said if we kept it closed with the bolts thrown we would be all right. ' * * * if you * * * close the inner door with the lever and throw the bolts you will be covered.' "

There is substantial evidence the inner safe door was closed with the bolts "thrown" and the two trays of rings inside when the two unknown men and their lady friend were in the store on November 15, 1945. Plaintiff testified he would have canceled the earlier policy except for McInerney's statements and he relied upon them in November 1944 in renewing the earlier policy for the one in force when the loss occurred. It was stipulated McInerney died about ten months before the trial.

Plaintiff testified the value to him of the missing tray of engagement rings was $1300. Asked what those rings cost he said, "Oh, $1150." He testified the value to him of the missing diamond wedding rings was $1200, their cost $1100, the value to him of four missing plain wedding rings was $60, their cost $16.

I. We are clear it was error to direct a verdict for plaintiff on either count.

The rule in Iowa and many other jurisdictions is that motions for directed verdicts by both parties do not amount to a concession the case should not be submitted to the jury or a waiver of the right to a jury verdict. Manska v. San Benito Land Co., 191 Iowa 1284, 184 N.W. 345, 18 A. L. R. 1430, and annotation 1433, 1455; In re Estate of Farley, 237 Iowa 1069, 1075, 24 N.W.2d 453, 456. See also 53 Am. Jur., Trial, section 346; annotations 69 A. L. R. 633, 639; 108 A. L. R. 1315, 1325.

Plaintiff had the burden of proof as to each count. We have frequently pointed out that in the absence of an admission by his adversary it is not often the party who has the burden establishes his claim as a matter of law. Nichols v. Kirchner, 241 Iowa 99, 103, 40 N.W.2d 13, 16, and citations; Davis v. Knight, 239 Iowa 1338, 1343, 35 N.W.2d 23, 26; Schulte v. Ideal Food Prod. Co., 203 Iowa 676, 678, 213 N.W. 431.

It is unnecessary to repeat what we have said in several

decisions as to when a verdict should be directed. See Roth v. Headlee, 238 Iowa 1340, 1343, 29 N.W.2d 923, 924, and citations. See also 53 Am. Jur., Trial, section 386.

While the jury could properly have found the two strange men took the rings from plaintiff's safe as he contends, this was not so clearly established as to warrant such finding as a matter of law. Further, the record is not entirely clear as to how many rings were taken. Plaintiff once testified there were fifty-two engagement rings. Another time he said there were forty-two such rings. Plaintiff is the only witness who testified to the number or value of the missing rings. His evidence as to value is merely his opinion and at least somewhat of an approximation. It should not have been accepted as a verity. Fowle v. Parsons, 160 Iowa 454, 141 N.W. 1049, 45 L. R. A., N. S., 181; Eaves v. City of Ottumwa, 240 Iowa 956, 965, 38 N.W.2d 761, 766, 767, 11 A. L. R.2d 1164, 1174.

It is especially clear plaintiff's claim of fraud in Count II was not established to the extent he was entitled to a directed verdict thereon. The claimed fraud consists of an oral statement by McInerney said to have been made nearly six years before this action was started. Plaintiff is the only witness to testify to the statement. Since McInerney died before the trial there was no way to directly refute plaintiff's testimony.

Evidence of claimed oral statements of a decedent should be closely scrutinized and cautiously received because it is not susceptible of denial and the witness may not have been capable or desirous of accurately relating what decedent may have said. Vander Zyl v. Muilenberg, 239 Iowa 73, 77, 29 N.W.2d 412, 414, and citations; Roth v. Headlee, supra, 238 Iowa 1340, 1345, 29 N.W.2d 923, 925; Byers v. Byers, 242 Iowa 391, 404–406, 46 N.W.2d 800, 807, 808, and citations.

The authorities heretofore cited fully support our conclusion plaintiff was not entitled to a directed verdict on either count.

II. Before Count I could properly be submitted to the jury there must have been substantial evidence the rings were taken by "overt felonious act committed" in the presence of plaintiff or Miss Gearhart of which he or she "was actually cognizant." We find no evidence the rings were taken by overt

felonious act of which either plaintiff or Miss Gearhart was actually cognizant. In fact it appears neither plaintiff nor Miss Gearhart was actually cognizant of any overt felonious act by which the rings were taken.

The words "actually cognizant" are not ambiguous and should be given their usual and ordinary meaning. Blank v. National Surety Co., 181 Iowa 648, 651, 165 N.W. 46, L. R. A. 1918B 562; King v. Equitable Life Assur. Soc., 232 Iowa 541, 542, 5 N.W.2d 845, 155 A. L. R. 1022, and citations; Eggena v. New York Life Ins. Co., 236 Iowa 262, 265, 18 N.W.2d 530; Boyd v. Travelers Fire Ins. Co., 147 Neb. 237, 22 N.W.2d 700, 702; 29 Am. Jur., Insurance, section 159; 44 C. J. S., Insurance, section 294.

"Cognizant" means having cognizance. By "cognizance" is meant knowledge, apprehension by the understanding, conscious recognition, the range of what may be known by observation. The antonyms of cognizant are unaware, uninformed. See Webster's New International Dictionary, Second Ed.; 14 C. J. S., page 1310.

"Actually" is a word of emphasis which means as a matter of fact; in fact, in reality, or in truth. It is distinguished from hypothesis or conjecture. It has been compared with "positively" and is the antonym of constructive, speculative. See 1 C. J. S., page 1445; Webster's New International Dictionary, Second Ed.

Neither plaintiff nor Miss Gearhart observed or had actual knowledge or awareness of any overt felonious act by which the rings were taken. It is clear they were both unaware of any such act. Plaintiff himself testified the first knowledge he had even that the rings were missing was when he reached in the safe nearly three hours after the two men left his store. Miss Gearhart did not know the rings were gone until plaintiff so informed her. After plaintiff found the rings were missing he then questioned Miss Gearhart and through her another clerk as to whether either had shown the rings that afternoon.

Plaintiff argues Miss Gearhart was actually cognizant of the taking of the rings by overt felonious act because she observed the acts of the woman accomplice while she was in the store when it is claimed the rings were taken. The argument is unsound. It is true Miss Gearhart observed the woman looking at

dresser sets. But she as well as plaintiff was unaware of any overt felonious act by which the rings were taken. Miss Gearhart was without actual knowledge the men took the rings and of course was not aware the woman was acting as accomplice in such taking.

Plaintiff relies heavily upon a decision of an intermediate appellate court in Bourg v. Travelers Indemnity Co., La. App., 15 So.2d 166. We think the agreed facts in the cited case are considerably stronger in favor of the insured than is the evidence here. There plaintiff, a lady storekeeper, "became extremely frightened" at the acts of the accomplice, who told her he did not want to buy any of the articles he had asked to see because he had no money; she screamed for help; the accomplice forcibly blocked the storekeeper's passage, rushed to a point near the money drawer, looked in that direction and hurriedly left. "Almost simultaneously with this" a lady entered the store seeking change for a five-dollar bill, plaintiff went to the money drawer, discovered the telephone off the hook, the back door unlatched, the money drawer open and a sum stolen therefrom. Plaintiff realized a crime had just been committed and so phoned the police. Two days later the accomplice and his principal were arrested. They were tried and convicted.

In the Bourg case recovery might have been placed upon the ground there was a felonious and forcible taking of property by putting the custodian in fear of violence. Further, Mrs. Bourg was aware of the overt, felonious act by which the money was stolen "almost simultaneously" with the commission of the crime. There is more support for a finding the custodian was actually cognizant of the taking than appears here.

We have carefully considered the decisions cited to us and several others found by our own search. None of them justifies submitting to the jury whether plaintiff or Miss Gearhart was actually cognizant of an overt felonious act by which these rings were taken.

III. As indicated, plaintiff's Count II is based on claimed fraud of defendant's agent McInerney committed in January or February 1942. The action was brought October 25. 1947. Defendant pleaded the cause stated in Count II is barred by section 614.1, paragraph 5, Code, 1946, which provides actions

"for relief on the ground of fraud in cases heretofore solely cognizable in a court of chancery, and all other actions not otherwise provided for" may be brought within five years "after their causes accrue, and not afterwards * * *."

In this connection Code section 614.4 states: "In actions for relief on the ground of fraud * * * the cause of action shall not be deemed to have accrued until· the fraud * * * shall have been discovered by the party aggrieved."

We have held in a long line of decisions that 614.4 applies only to actions for relief on the ground of fraud that were, at common law, solely cognizable in equity before the statute was adopted and 614.4 has no application to a law action such as stated in Count II. See Higbee v. Walsh, 229 Iowa 408, 421, 294 N.W. 597; McGrath v. Dougherty, 224 Iowa 216, 223, 275 N.W. 466; Benedict v. Hall, 201 Iowa 488, 491, 207 N.W. 606; Wagner v. Standard Seed Tester Co., 194 Iowa 1330, 1332, 191 N.W. 314, and citations.

In addition to the statutory provision in 614.4 for tolling the statute of limitations, we have recognized the doctrine of fraudulent concealment first announced by us in District Township of Boomer v. French, 40 Iowa 601, 603: "* * * where the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered."

The cited French case is typical of those in which the quoted rule has been applied. It was an action by a school district to recover from its treasurer moneys appropriated by him to his own use. Defendant had concealed his fraud by fictitious and fraudulent entries on his books and other fraudulent concealments and misrepresentations. We held the petition which alleged the above matters was not subject to a demurrer that raised the statute of limitations.

Among later decisions which have recognized the doctrine of fraudulent concealment are Pullan v. Struthers, 201 Iowa 1179, 207 N.W. 235; City of Pella v. Fowler, 215 Iowa 90, 94, 244 N.W. 734; Smith v. Middle States Utilities Co., 224 Iowa 151, 157, 275 N.W. 158, 162; City of Carroll v. Arts, 225 Iowa

487, 489, 280 N.W. 869; Higbee v. Walsh, supra, 229 Iowa 408, 421, 294 N.W. 597. Plaintiff here relies upon the rule of these cases in an attempt to avoid the bar of the statute of limitations.

Unless it appears, as plaintiff contends, defendant fraudulently concealed from plaintiff the cause of action asserted in Count II and that plaintiff exercised diligence to discover the same, the cause accrued when the claimed fraud was committed and the action was barred when commenced more than five years later. While we do not understand plaintiff disputes this, see in support of our conclusion McGrath v. Dougherty, supra, 224 Iowa 216, 223, 275 N.W. 466; Benedict v. Hall, supra, 201 Iowa 488, 491, 207 N.W. 606; Wagner v. Standard Seed Tester Co., supra, 194 Iowa 1330, 1332, 191 N.W. 314; Ogg v. Robb, 181 Iowa 145, 162 N.W. 217, L. R. A. 1918C 981; Gamet v. Haas, 165 Iowa 565, 566, 146 N.W. 465; McKay v. McCarthy, 146 Iowa 546, 551, 123 N.W. 755, 34 L. R. A., N. S., 911.

Under our repeated holdings the burden rested on plaintiff to allege and prove facts showing (1) that defendant fraudulently concealed from plaintiff the cause of action asserted in Count II and (2) plaintiff exercised diligence to discover the cause of action. Hay v. Denver Sav. Bk., 229 Iowa 634, 642, 295 N.W. 176, 180, and citations; Higbee v. Walsh, supra, 229 Iowa 408, 422, 423, 294 N.W. 597; Smith v. Middle States Utilities Co., supra, 224 Iowa 151, 157, 275 N.W. 158, 162. See also annotation 172 A. L. R. 265, 278, 279.

Plaintiff recognized the burden imposed on him under our decisions by alleging in reply that defendant concealed the claimed fraud asserted in Count II by remaining silent in regard thereto when it was its duty to reveal to plaintiff the falsity of the representations and also alleging that plaintiff exercised diligence in ascertaining the terms of his policy. Plaintiff does not allege facts showing diligence in attempting to discover his cause of action for claimed fraud.

We have held many times that mere silence of a defendant does not amount to fraudulent concealment of a cause of action unless a fiduciary relation exists between plaintiff and defendant, imposing upon the latter the duty to reveal to the former all facts which might affect his interest. Where such fiduciary relation exists defendant's failure to reveal facts he is

under a duty to disclose takes the place of the affirmative acts of concealment required when there is no such fiduciary relation. See decisions last above, also Conklin v. Towne, 204 Iowa, 916, 920, 921, 216 N.W. 264, 266; Pullan v. Struthers, supra, 201 Iowa 1179, 1181, 207 N.W. 235; Wagner v. Standard Seed Tester Co., supra, 194 Iowa 1330, 1332, 191 N.W. 314; Birks v. McNeill, 185 Iowa 1123, 1137, 170 N.W. 485. See also annotation 173 A. L. R. 576, 585, 588.

In apparent recognition of the authorities just cited plaintiff's brief states this proposition in his attempt to avoid the statute of limitations: "There having been a fiduciary relationship between McInerney and plaintiff, the statute did not commence to run until discovery of the fraud."

We are very clear the evidence is entirely insufficient to support a finding there was a fiduciary relation between McInerney and plaintiff and therefore the doctrine of fraudulent concealment has no application to this case.

McInerney was defendant's agent, not plaintiff's. Plaintiff so alleges and defendant admits the allegation. Unless McInerney was defendant's agent and acted within the scope of his agency of course plaintiff has no case under Count II. This agency created a fiduciary relation between McInerney and the company with respect to the matters within the scope of his agency. 2 Am. Jur., Agency, section 252. Ordinarily one may not act as agent or other fiduciary for both parties to a transaction except with consent of both.

"And as a general rule, the same person cannot act as agent for both the company and the insured, unless he does so with the consent of both parties; and, if he does so act, the contract of insurance may be avoided by the company." Nertney v. National Fire Ins. Co., 199 Iowa 1358, 1366, 203 N.W. 826, 830. To the same effect are 44 C. J. S., Insurance, section 141; 29 Am. Jur., Insurance, sections 89, 92; 2 Am. Jur., Agency, section 262. See also Code section 515.125.

Plaintiff argues that wherever one party to a business transaction has superior knowledge of the facts involved therein a fiduciary relation exists and that McInerney had such knowledge. While of course there may be a fiduciary relation even though there is no relation of trustee and cestui, guardian

and ward, attorney and client or the like, we think the authorities do not go to the extent plaintiff contends. The logical result of this argument would be there is a fiduciary relation between both parties to most transactions since it is seldom one does not have knowledge of the facts superior to the other.

McInerney was a stranger to plaintiff, who saw him but once. There is no evidence plaintiff placed any special trust or confidence in him. Plaintiff is an educated man, admitted to the Iowa bar nineteen or twenty years before the trial. He had been employed in the investment department of the Bankers Life Company twelve years during which he handled the insurance policies on properties in Texas covered by the company's loans. He had read both the earlier policy issued by defendant and the renewal thereof and knew their provisions.

Plaintiff alleges in his petition he told both the local agent and McInerney that in his opinion the burglary provisions of the earlier policy did not cover the risks he desired and explained to each the reasons for his opinion. It will be noticed the claimed fraud has to do with the interpretation of the policy, not what its actual terms were. There is no evidence as to McInerney's education, background or knowledge of insurance matters although it is admitted he was a special agent for defendant. It is not shown he had any legal training or that plaintiff so believed.

In any event, it is clear there was no continuing fiduciary relation between plaintiff and McInerney which imposed upon the latter a continuing duty to divulge to the former the facts which might affect his interest. Any relationship that may have existed between plaintiff and McInerney ended at the conclusion of the one talk between them.

The claimed failure of McInerney to inform plaintiff his policy would not be in effect unless all doors of the safe were closed and locked by all combination locks and unless there were visible marks of violence upon the doors (as the policy, to plaintiff's knowledge, plainly provided) was the essence of the original fraud charged against McInerney in Count II. To hold such failure also amounted to fraudulent concealment of plaintiff's alleged cause of action would, in effect, wipe out the statute of

limitations. See Birks v. McNeill, supra (Ladd, C. J.), 185 Iowa 1123, 1137, 170 N.W. 485.

See also in support of our conclusion there was no fiduciary relation between plaintiff and McInerney: Benedict v. Hall, supra, 201 Iowa 488, 492, 207 N.W. 606; Wagner v. Standard Seed Tester Co., supra, 194 Iowa 1330, 1332, 191 N.W. 314; Neff v. New York Life Ins. Co., 30 Cal.2d 165, 174, 180 P.2d 900, 906, 171 A. L. R. 563, 571; Kansas City Life Ins. Co. v. Nipper, 174 Okla. 634, 51 P.2d 741.

The conclusion we have reached makes it unnecessary to consider the effect of plaintiff's failure to plead facts showing diligence in attempting to discover the cause of action asserted in Count II and whether there is any evidence tending to show such diligence.

In this division of our opinion we have assumed, without deciding, it would be proper to submit Count II to the jury if it were not for the statute of limitations.

■ IV. We have held in Division I hereof it was error to direct a verdict for plaintiff on either count. We conclude it was also error to overrule defendant's motion to direct verdicts, as indicated in Division II hereof upon Count I, and for the reasons stated in Division III upon Count II. Granting of defendant's motion would of course have terminated the case in favor of defendant. Since it appears from the record that the material facts relating to all issues were fully developed at the trial and in our opinion the ends of justice would not be served by awarding a new trial, the trial court is directed, pursuant to rule 349, R. C. P., to enter final judgment for defendant as if its motion to direct had been initially sustained. See In re Estate of Klein, 241 Iowa 1103, 1119, 42 N.W.2d 593, 602, and citations. —Reversed and remanded.

WENNERSTRUM, C.J., and BLISS, OLIVER, SMITH, MULRONEY, HAYS, and THOMPSON, JJ., concur.