## PARHAM'S, Inc. v. EMPLOYERS MUTUAL LIABILITY INS. CO.

Circuit Court, Dade County, Civil Appeal.
February 4, 1952.

Brown, Dean & Hill, Miami, for appellant.

Redfearn & Ferrell, Miami, for appellee.

GRADY L. CRAWFORD, Circuit Judge.

This appeal is from a final judgment of the civil court of record dated September 25, 1951. Plaintiff below, Parham's, Inc., brought its action against the Employers Mutual Liability Insurance Co. on a "commercial robbery" policy. The policy was issued on January 1, 1950 and was in force at the time of the loss on February 27, 1950.

The facts alleged show that on February 27, 1950 two or three men approached the counter in plaintiff's restaurant; that one of them falsely represented to plaintiff's cashier that "they" had been sent there by the bank to give her the numbers of bogus currency then in circulation so that she could watch out for them; that while she was writing down the numbers given to her by him her attention was diverted from the sum of $4,931.97 in cash which was in her custody in plaintiff's safe located behind the counter and at the cashier's side; that while her attention was thus diverted one of the men clandestinely took the money from the safe; and that the same was a total loss to plaintiff.

The cashier was not aware of the loss until some minutes after the theft when a customer in the restaurant reported the suspicious movements of one of the men to a hostess who in turn reported to the cashier.

Defendant moved to dismiss the complaint on the ground that it affirmatively appeared that the loss claimed was not occasioned by robbery within the terms of the policy. The lower court denied the motion to dismiss. Defendant then filed an answer and later an amended answer in which it denied that the loss occurred within the terms of the policy.

Plaintiff filed a motion for a summary judgment with a number of supporting affidavits. Defendant filed written objections to the motion for summary judgment, and a motion to strike portions of the supporting affidavits. The objections and motion to strike were denied by the lower court and on September 23, 1951 the court entered final summary judgment for the plaintiff. From this judgment defendant appeals.

The sole question presented on the appeal is whether or not the robbery as it occurred falls within the terms of the commercial robbery insurance policy in effect at the time of the loss. This policy defined robbery within its terms to mean "the felonious taking of the insured's property (a) by violence inflicted upon a custodian, (b) by putting him in fear of violence, (c) by any other overt, felonious act committed in his presence, and of which he is actually cognizant."

It is admitted that the theft was accomplished "without any violence inflicted upon the custodian" or "by putting him in fear of violence". It is also clear that the loss was occasioned by an "overt, felonious act" and that the overt, felonious act was "committed in his presence." It seems equally clear, however, that the overt, felonious act committed in the presence of the custodian was not one "of which he was actually cognizant." It is not disputed that the cashier did not know at any time during the theft that there was a theft or crime being committed.

Plaintiff argues that the two or three men involved acted in concert in the course of a conspiracy to steal and the *act* in giving the cashier the numbers of alleged counterfeit bills was committed in her presence and she was actually cognizant of said act and that it was in the law of conspiracy part of a plan to steal the money, and that, therefore, the case comes within the coverage of the policy.

Plaintiff's argument is unsound. The facts are that the cashier was not actually cognizant of a *felonious* act. The act did not arouse any suspicion on her part, there was no violence

or threat of violence and she did not know that any theft or crime was being committed. The theft was not discovered until after the thieves left the premises.

The essential and indispensable element of a robbery is violence or threat of violence or some act of which the robbed person is cognizant and which act put or was capable of putting the person in fear.

The policy involved in this case is a familiar policy, well known and well understood in the trade. The meaning and intent of the policy is clear. It defined "robbery" within its terms—as contrasted with theft, larceny or embezzlement not within its terms. The words "actually cognizant" contained in the policy must be given meaning. They are not ambiguous and should be given their usual and ordinary meaning. Cognizant means having cognizance. By cognizance is meant knowledge, apprehension by understanding, conscious recognition, the range of what may be known by observation. See Cole v. Hartford Accident & Indemnity Co. (Iowa), 46 N.W. 2d 811, at page 815.

Plaintiff relies on the case of Accident & Casualty Insurance Co. v. Cone & Cohen, which case originated in the civil court of record, Dade County, Florida, was appealed to the circuit court having civil appeal number 833-F, was affirmed by the circuit court without opinion and certiorari was denied, also without opinion, on July 11, 1951 by the Supreme Court of Florida, 58 So. 2d 883. This court does not feel that the cited case is the controlling law of *stare decisis* since there was no opinion written in the circuit court on appeal and since the Supreme Court denied certiorari in the matter and we do not have an opinion from that court as a guide to follow.

It seems clear that the plaintiff's cashier had no actual knowledge or "cognizance" of any felonious act by which the money was taken and that she was without actual knowledge that the men took the money. From the facts it appears that the cashier was not *actually cognizant* of an overt, felonious act committed in her presence resulting in the loss of the money, and, therefore, the theft does not fall within the terms or provisions of the insurance policy. The case alleged and attempted to be established by the motion for summary judgment and supporting affidavits was, in the opinion of this court, insufficient to justify the granting of the summary

judgment or a recovery for the plaintiff. The trial court erred in denying defendant's motion to dismiss and in entering summary judgment in favor of plaintiff. The judgment of the lower court is reversed.