793 P.2d 1102

**The ESTATE OF Sam KIRSCHENBAUM and Annette Kirschenbaum, a widow, Plaintiffs/Appellants,**

v.

**Irving KIRSCHENBAUM, Defendant/Appellee.**

**Nos. 2 CA–CV 88–0387, 2 CA–CV 89–0068.**

Court of Appeals of Arizona, Division 2, Department B.

Dec. 14, 1989.

Reconsideration Denied Jan. 30, 1990.

Review Denied May 24, 1990.

**436**

Ethan Steele and Stompoly & Stroud, P.C. by William G. Walker, Tucson, for plaintiffs/appellants.

Lieberthal & Kashman, P.C. by Howard A. Kashman, Tucson, for defendant/appellee.

## OPINION

FERNANDEZ, Chief Judge.

This case involves a suit by the estate of a deceased partner against the surviving partner regarding the partnership assets. We are asked to review the propriety of the court's granting of the surviving partner's motion for summary judgment.

Sam and Irving Kirschenbaum were brothers who operated a furniture store in New York City. In the early 1950's, Irving moved to Tucson. In 1952, he took title to property on Grant Road, and in 1955, he deeded one-half of it to Sam. Their father gave a piece of property on South Sixth Avenue to Irving, Sam, and Sam's wife Annette in 1952.

The rents from both properties were deposited into joint bank accounts in both brothers' names. The properties and income in Tucson were managed by Irving, who kept possession of the accounts. Each year Irving sent partnership financial information to Sam who had both the partnership tax returns and Irving's personal returns prepared. The brothers maintained a close personal and business relationship after Irving moved to Tucson. They spoke to each other on the phone weekly, and nearly every year during his vacation, Sam spent several weeks with Irving in Tucson.

The Grant Road property was sold in August 1979. Part of the payment was a promissory note. Apparently Sam and Irving each received one-half the payments on the note prior to Sam's death. After his death, Annette began receiving one-half the monthly payments. She admitted at her deposition that she had never received any rents on the Sixth Avenue property although her name is on the deed, so she did not expect to receive any rents after Sam's death.

Sam died January 15, 1981. After his funeral, Sam's daughter Roberta asked Irving about Sam's assets in Arizona. Irving told her Sam had nothing left in Tucson. On January 19, Irving sent Roberta the plane fare he had borrowed with a note that stated, "Other papers will follow soon." Annette filed an affidavit in Sam's probate proceeding in a New York surrogate court in June 1981, listing assets of the estate. She included "a building" in Arizona owned by Sam in common with his brother. She also listed "[a] one-half (½) interest in a mortgage covering certain real estate in Arizona" and stated that before the property had been sold and the purchase money mortgage taken, the property had been rented for a number of years. Annette stated that she believed that there was approximately $30,000 in unaccounted-for rents to which her late husband was entitled because of his half ownership of the property. Annette testified at her deposition that Sam never discussed his assets and investments with her.

In October 1983, Annette wrote to Irving asking about the rents he had received on behalf of Sam. Sometime after that Irving called Annette, said there was a bank account that belonged to her, and he would mail her a check for $1600 or $1700. Also in 1983, Sam's family found papers of Sam's listing stock investments of Sam and Irving. In late 1985, Roberta obtained records of a brokerage account in Tucson that was in Irving's name alone. The account had approximately $428,000 in it. On July 3, 1985, the New York lawyer representing Sam's estate took Irving's deposition. Irving testified that the funds used to purchase stocks in his name all came from a separate account that did not contain any funds belonging to Sam.

On June 13, 1986, Sam's estate and Annette (appellants) filed suit against Irving (appellee). The complaint seeks a partnership accounting, alleges that Irving committed theft or embezzlement by failing to pay Sam rents collected on both the Grant Road and Sixth Avenue properties, seeks partition of the Sixth Avenue property, and alleges that the stocks purchased by Irving were bought with partnership funds and are held in constructive trust. An amended complaint was filed in June 1987 that added a count for fraud and one for fraudulent scheme or artifice to defraud under the Arizona racketeering statutes, A.R.S. §§ 13–2301 and –2314.

Irving moved for partial summary judgment on six of the seven counts. In his affidavit attached to the motion, he stated that all accounts on which Sam's name appeared were held in joint tenancy with the right of survivorship and that all the funds in them became his at Sam's death. The court granted Irving's motion, and the parties also stipulated to entry of judgment on the partition count. The court ordered the Sixth Avenue property to be sold and the proceeds to be divided equally. The court also awarded Irving his attorney's fees. On appeal, Annette contends the court erred, arguing that because a surviving partner has a fiduciary duty to disclose to the estate and heirs of a deceased partner all assets belonging to the deceased partner, Irving violated his fiduciary duty by fraudulently concealing and failing to account for assets belonging to Sam and that his conduct tolled the statute of limitations.

## STATUTES OF LIMITATIONS

■ Appellants' right to an accounting arose at the time of Sam's death in January 1981 when the partnership was dissolved by operation of law. A.R.S. §§ 29–231(D) and –243. The applicable statute of limitations is four years for an accounting. A.R.S. § 12–544(2). The two causes of action for embezzlement have a two-year statute of limitations. A.R.S. § 12–542(5). According to Annette's answers to interrogatories, the alleged thefts occurred at the time of Sam's funeral in January 1981 when Irving told Roberta that Sam had nothing left in Tucson. The cause of action alleging that Irving bought stocks with partnership money and that the stocks are held in constructive trust seeks an accounting and alleges that Irving's acts constituted conversion and/or embezzlement. The statute of limitations for that cause of action is thus two years. A.R.S. § 12–542(5). The fraud cause of action has a three-year statute of limitations. A.R.S. § 12–543. Because the complaint was not filed until June 1986, unless Annette can show a tolling of the statute of limitations, those five causes of action are barred.

Annette contends that Irving's conduct of concealing Sam's share in the assets while Irving owed Sam a fiduciary duty tolled the statute of limitations until the family discovered Irving's brokerage account in 1985. The law in Arizona is that one partner is a fiduciary of the other.

'The relation of partnership is fiduciary in character, and imposes upon the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresen-

tation, concealment, threat or adverse pressure of any kind.'

*De Santis v. Dixon*, 72 Ariz. 345, 350, 236 P.2d 38, 41 (1951), *quoting* 68 C.J.S. *Partnership* § 76 at 516–17 (1950). These fiduciary duties extend to a surviving partner dealing with the assets of a deceased partner. A.R.S. §§ 29–220 and –221(A) read as follows:

> Partners shall render on demand true and full information of all things affecting the partnership to any partner *or the legal representative of any deceased partner* or partner under legal disability.

> Every partner must account to the partnership for any benefit, *and hold as trustee for it any profits derived by him* without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property.

(Emphasis added.)

The evidence is undisputed that during Sam's lifetime, he was continually apprised of the financial status of the partnership by telephone calls, yearly accountings, and visits to Arizona. After he died, the family made an initial inquiry when Roberta asked Irving about Sam's assets in Arizona. That they were aware of the possibility of assets is reflected in Annette's affidavit in Sam's probate proceeding mentioning the one-half interest and the unaccounted-for rents in the Grant Road mortgage and the one-half interest in the Sixth Avenue property. The family did nothing further until October 1983 when Annette wrote Irving a letter asking about the rents. She stated in that letter, "I have been trying to get myself to write you nearly 3 yrs now...." Annette testified at her deposition that she hired a lawyer in late 1983. It is undisputed that Sam's estate took Irving's deposition in July 1985. Roberta obtained records on Irving's brokerage account in the summer or fall of 1985. Yet, suit was not filed until June 1986.

Even if Irving concealed Sam's assets, it is clear the family was aware soon after Sam died of the possibility that those assets existed and that Irving had not ac-

counted for them. The cases of *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 412 P.2d 47 (1966) and *Coronado Development Corp. v. Superior Court*, 139 Ariz. 350, 678 P.2d 535 (App.1984) both stand for the proposition that the statute of limitations in a fraud case starts to run when the plaintiff, by reasonable diligence, should have learned of the fraud. One does not need to know every fact about his fraud claim before the limitations statute begins to run. *Coronado.*

Annette contends that because Irving owed Sam (and Annette, once she was named Sam's executrix) a fiduciary duty, the statute of limitations was tolled by his fraudulent concealment until she actually discovered his fraud, citing *Higbee v. Walsh*, 229 Iowa 408, 294 N.W. 597 (1940). Annette, however, has misread the rule. "[N]o matter what the form of action is, if it is based on a fraudulent concealment by one occupying a position of trust, the statute does not begin to run until the other party discovers *or is put upon reasonable notice of* the breach of the trust." *Taylor v. Betts*, 59 Ariz. 172, 180, 124 P.2d 764, 767 (1942) (emphasis added). *Accord Tovrea, supra; Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590 (1948);* Walker v. Walker, *18 Ariz.App. 113, 500 P.2d 898 (1972).* Even the case cited by Annette follows that rule. " '[T]he statute would only commence to run from the time the right of action was discovered, or *might, by the use of diligence, have been discovered.*' " 229 Iowa at 422, 294 N.W. at 605, quoting *District Township of Boomer v. French*, 40 Iowa 601, 603 (1875) *(emphasis added).* Because Annette was put on inquiry as to any fraud by Irving many years ago, even if Irving did violate his fiduciary duty and conceal the assets, the statute of limitations still ran before suit was filed.

Annette argues that members of the Kirschenbaum family regularly held joint bank accounts with each other with the understanding that the survivor was to account for the funds to the family of the deceased. Because Sam held property with his daughter in this manner, she thus argues that his joint accounts with Irving were held in the

same manner. Because she did not raise that argument below, we do not address it. *Richter v. Dairy Queen of Southern Arizona, Inc.*, 131 Ariz. 595, 643 P.2d 508 (App.1982).

Annette also argues that Irving testified differently in his 1985 deposition, when he stated that he had no joint investments with Sam, than he did in his deposition in 1987 in which he stated that Sam's rent money was deposited into an account with Irving's rent money. Testimony in May 1987, however, does not serve to toll the statute of limitations as to a complaint filed in June 1986.

## RICO CAUSE OF ACTION

▮ Irving raised two arguments in his partial summary judgment motion on the RICO count. The first was that it is barred by the rule that a partner cannot be found guilty of embezzling partnership money because he himself has an interest in the money, citing *In re Sanders*, 23 Ariz. 20, 201 P. 93 (1921). As Annette has pointed out, however, our theft statute was changed in 1978 when our criminal code was revised. It now provides:

A person commits theft if, without lawful authority, such person knowingly:

1. Controls property of another with the intent to deprive him of such property; ....

A.R.S. § 13–1802(A). "Property of another" is defined as

property in which any person other than the defendant has an interest which the defendant is not privileged to infringe, including property in which the defendant also has an interest....

A.R.S. § 13–1801(12). The explanation of the revised statute includes the following: "[C]riminal deprivation may occur in taking one's own property in which another has a legal interest (taking one's own watch, for example, from a jeweler without payment for repairs, or taking partnership interests)." R. Gerber, *Criminal Law of Arizona* at 246 (1978). We find no merit to Irving's contention that a partner cannot be found liable for theft of partnership money.

▮ Irving's second argument is that the RICO count is barred by the accounting rule that causes of action between partners are not permitted until an accounting has occurred. The parties have devoted a considerable portion of their briefs to arguments on whether or not the rule should be abolished. That issue has now been resolved by the supreme court which recently abolished the accounting rule. *Sertich v. Moorman*, 162 Ariz. 407, 783 P.2d 1199 (1989).

The statute of limitations is not an issue as to this cause of action; the statute of limitations on a RICO claim is seven years. A.R.S. § 13–2314(H). Therefore, summary judgment as to the RICO cause of action is reversed.

## ATTORNEY'S FEE AWARD

Annette's final contention is that the trial court erred in awarding Irving his attorney's fees pursuant to A.R.S. § 12–341.01(A). She argues that a fee award is not permitted under *Barmat v. John & Jane Doe Partners A–D*, 155 Ariz. 519, 747 P.2d 1218 (1987) because the causes of action for accounting, breach of fiduciary duty, theft and fraud relate specifically to Irving's partnership duties and are those "implied in law" rather than those "implied in fact."

In view of the fact that the case is being remanded for further proceedings on the RICO count, we set aside the attorney's fee award to await final determination of the case.

The summary judgment on the causes of action for accounting, embezzlement, constructive trust, and fraud is affirmed. The summary judgment on the RICO cause of action is reversed. The award of attorney's fees to Irving is set aside. Each party is to bear its own attorney's fees and costs on appeal.

LIVERMORE, P.J., and LACAGNINA, J., concur.